UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID GIMINIANI,

              Appellant,              1:11-CV-1113
                                                    (GTS)

v.

MICHAEL CESAR,

              Appellee.
_____

APPEARANCES:                                            OF COUNSEL:

OFFICE OF ROBERT J. ROCK                  ROBERT J. ROCK, ESQ.
  Counsel for Appellant
60 South Swan Street
Albany, New York 12210

HIGGINS, ROBERTS, BEYERL & COAN, P.C.    MICHAEL E. BASILE, ESQ.
  Counsel for Appellee
1430 Balltown Road
Schenectady, New York 12309

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

       Currently before the Court, in this bankruptcy appeal filed by David Giminiani ("Appellant") against Michael Cesar ("Respondent"), is Appellant's appeal from an Order of Dismissal issued by United States Bankruptcy Judge Robert E. Littlefield on August 12, 2011. (Dkt. No. 1.) For the reasons set forth below, Appellant's appeal is denied, and Judge Littlefield's decision is affirmed.

## I.   RELEVANT BACKGROUND

Following Respondent's filing of a Chapter 7 bankruptcy petition, Appellant filed a Complaint objecting to dischargeablility pursuant to 11 U.S.C. § 523. (Dkt. No. 5, Attach. 1.) Generally, Appellant's Complaint alleged that Appellant purchased Respondent's company, Acme Press, Inc. ("Acme"), under false pretenses, false representations, or actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A). (*See generally id.*)[1] On April 26, 2010, Judge Littlefield held a trial on the matter. (Dkt. No. 5, Attach. 13.) The trial established the following facts.

Kevin Kryskowski ("Kryskowski"), a self-employed business broker, contacted Respondent about the possibility of buying a commercial printing company that Kryskowski was representing at the time. (Dkt. No. 5, Attach. 13 at 21.) Respondent, however, communicated to Kryskowski that he was interested in selling Acme because he was nearing retirement. (*Id.*) Kryskowski then became Respondent's agent in selling Acme. (*Id.*)

Due to his previous business relationship with Appellant, Kryskowski contacted Appellant about the possibility of purchasing Acme. (*Id.*; Dkt. No. 5, Attach. 13 at 41.) As a result, and upon Appellant's request, Respondent shared some of Acme's business information with Appellant for the purpose inducing the sale of Acme to Appellant. (Dkt. No. 5, Attach. 13 at 42-44.) This information included Acme's tax returns, information regarding inter-company transactions between another company owned by Respondent (called "PSD") and Acme, and a business plan drafted by Kryskowski to help Appellant obtain financing for the purchase of

---

[1] Appellant's Complaint also contained claims pursuant to 11 U.S.C. §§ 523(a)(2)(B), (a)(4) and (a)(6). (Dkt. No. 5, Attach. 1 at 6-7.) At trial, however, Appellant withdrew his claims under 11 U.S.C. §§ 523(a)(4) and (a)(6) (Dkt. No. 5, Attach. 13 at 4-5), and Judge Littlefield dismissed Appellant's claim under 11 U.S.C. § 523(a)(2)(B) (Dkt. No. 5, Attach. 13 at 81-82).

Acme.  (*Id.* at 22, 44.)  In the course of the parties' discussions prior to Appellant's purchase of Acme, Respondent told Appellant that Acme would benefit from "anyone working the company on a full-time basis" because Respondent was not working at Acme full time.  (*Id.* at 37.)

On April 29, 2005, Appellant and Respondent signed a purchase-and-sales agreement for Acme, pursuant to which Appellant would purchase Acme from Respondent.  (*Id.* at 32, 50, 53.)  After that date, Appellant applied for financing through First Niagara Bank, and in late November 2005, First Niagara requested additional information from Appellant about Acme.  (*Id.* at 50-51.)  When Appellant forwarded First Niagara's request to Respondent, Respondent refused to furnish Appellant with the additional information.  (*Id.* at 52.)  Also in November 2005, Kryskowski told Appellant that Acme's "business was booming."  (*Id.* at 54.)  Although Respondent did not provide the information requested by First Niagara, the parties closed the purchase and sale of Acme on December 13, 2005.  (*Id.* at 40, 55.)

Following closing, Appellant discovered that, between April 29, 2005, and December 13, 2005, Acme's sales percentage decreased by approximately 30 percent.  (*Id.* at 55.)  Respondent, however, did not inform Appellant of the sales-percentage decrease before the parties closed.  (*Id.*)

After trial, on July 20, 2011, Judge Littlefield held a hearing where he issued an oral decision dismissing Appellant's remaining claim under 11 U.S.C. § 523(a)(2)(A). (Dkt. No. 5, Attach. 19 at 2; Dkt. No. 12.)  On August 12, 2011, Judge Littlefield issued a written Order of Dismissal incorporating his oral decision from the hearing on July 20, 2011.  (Dkt. No. 5, Attach. 19.)  On September 20, 2011, Appellant timely filed his notice of appeal.  (Dkt. No. 1.)

**II.     STANDARD OF REVIEW**

"Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may 'affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree,' or it may remand with instructions for further proceedings." *In re Smorto*, 07-CV-2727, 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008) (citing Fed. R. Bankr. P. 8013). "The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error." *In re Smorto*, 2008 WL 699502, at *4.

**III.    ANALYSIS**

    **A.     Whether the Bankruptcy Judge Erred in Precluding Appellant's Expert From Testifying at Trial**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Respondent's Brief. (Dkt. No. at 4-6.) The Court would add only the following analysis.

A trial court's decision to exclude an expert witness is reviewed under an abuse of discretion standard. *See e.g., In re CBII Holding Co., Inc.*, 419 B.R. 553, 563 (S.D.N.Y. 2009) ("The Bankruptcy Court's . . . rulings excluding or admitting expert testimony are reviewed under an abuse of discretion standard.") (citing *Universal Church v. Geltzer*, 463 F.3d 218, 226 [2d Cir. 2006]). "Also, a trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *In re DG Acquisition Corp.*, 151 F.3d 75, 79 (2d Cir. 1998) (quotation marks and alterations omitted). Courts within the Second Circuit have held that a party's failure to timely disclose its expert witness in accordance with a court's pretrial scheduling order is appropriate grounds for precluding the expert from testifying. *See, e.g., Kassim v. City of Schenectady*, 221

F.R.D. 363, 366 (N.D.N.Y. 2003) (Hurd, J.) (precluding the plaintiff's expert from testifying because, inter alia, "Plaintiff's counsel was reminded of the deadlines in the [Uniform Pretrial Scheduling Order], and the court's intention to strictly adhere to them, on numerous occasions, both in the [Uniform Pretrial Scheduling Order] itself and in a letter sent by [the Magistrate Judge] at the halfway point of discovery"); *cf. Syracuse Univ. v. Otis Elevator Co.*, 09-CV-0172, 2010 WL 2680230, at *2 (N.D.N.Y. 2010) (Peebles, M.J.) (commenting that "[d]eadlines imposed under a [Fed. R. Civ. P. 16] scheduling order are not mere suggestive guideposts; they are meaningful deadlines established by the court, in consultation with the litigants, intended to insure that the ends of justice and the need for prompt and efficient adjudication of controversies are met").

Here, Judge Littlefield precluded Plaintiff's expert from testifying because Appellant's disclosure was untimely.  More specifically, Judge Littlefield held that "[t]he [Federal Rules of Civil Procedure] speak for themsel[ves,] as well as the scheduling order." (Dkt. No. 5, Attach. 13 at 12.)  This reasoning alone is sufficient to preclude an expert witness' testimony. *Kassim*, 221 F.R.D. at 366.

In addition, upon reviewing the trial transcript and the parties' Pretrial Statements, the Court finds that Appellant also failed to demonstrate good cause for failing to timely disclose his expert.  (*See generally* Dkt. No. 5, Attach. 13; Dkt. No. 5, Attachs. 10-12.)  More specifically, the Court finds both of Appellant's arguments, made at various times during the underlying adversarial proceeding and on appeal, unpersuasive.

First, at trial, Appellant argued that he did not know he would need an expert until after the date that depositions were taken, which was too close to the expert disclosure deadline for him to timely disclose his expert. (Dkt. No. 5, Attach. 13 at 7-8.) More specifically, Appellant's expert disclosure was due on March 26, 2010, and depositions occurred on March 22, 2010. (*Id.*) Although the Court recognizes the challenge Appellant faced in securing an expert, obtaining his report, and serving the opposing party in only four days, the Court also recognizes that Appellant could have requested, but failed to request, an extension of time from Judge Littlefield. (*See generally* Bankruptcy Docket.) Indeed, Appellant waited until April 21, 2010, when he filed his Pretrial Statement, to disclose his expert to Respondent. (Dkt. No. 5, Attach. 5.) In addition, in Appellant's Pretrial Statement, Appellant failed to include either the expert witness' qualifications or an expert report for either Judge Littlefield or Respondent to substantively evaluate prior to trial. (*Id.*)

Appellant's second argument, articulated both at trial and in its papers in the adversary proceeding below, is that, because Respondent allegedly failed "to comply with proper discovery" in neglecting to provide Appellant with Acme's 2006 tax return, Judge Littlefield should have balanced the equities by allowing Appellant's expert to testify. (Dkt. No. 5, Attach. 13 at 7; Dkt. No. 21.) The Court finds that this argument is unpersuasive because Appellant did not set forth any proof that Respondent's failure to provide Acme's 2006 tax return was a failure to comply with any discovery rules. (*See generally* Dkt. No. 7.) Also, in any event, Appellant has failed to articulate any correlation between Respondent's alleged failure to comply with discovery and Appellant's failure to timely disclose his expert witness. (*Id.*)

For all of these reasons, the Court finds that Judge Littlefield did not err in precluding Appellant's expert from testifying.

### B.  Whether the Bankruptcy Judge Erred in Permitting Respondent's Previously Undisclosed Witness to Testify at Trial

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Respondent's Brief.  (Dkt. No. 8 at 6-7.)  The Court would only add that Appellant has failed to demonstrate how he was prejudiced by Respondent's previously undisclosed witness' testimony.  (*See generally* Dkt. No. 7.)  More specifically, after reviewing the entire record on appeal, including the trial transcript, the Court finds that Respondent's witness' testimony had little, if any, effect on the outcome of the adversary proceeding.  For example, Respondent's witness answered four questions during Respondent's examination, and the witness did not recall the answer to two of the four.  (Dkt. No. 5, Attach. 13 at 93.)  In addition, after partially granting Respondent's motion for a directed verdict following Appellant's proof, Judge Littlefield limited the parties' further proof to answering the following question: did Respondent have "an affirmative duty to somehow disclose [Acme's thirty-percent sales decrease from April 2005 to December 2005] either orally, [or] in writing"?  (Dkt. No. 5, Attach. 13, at 90-91.)  The questions posed to Respondent's previously undisclosed witness do not address that limited question.  (*Id.* at 93-94.)

For all of these reasons, the Court finds that Judge Littlefield did not err in permitting Respondent's previously undisclosed witness to testify at trial.

### C.  Whether the Bankruptcy Judge Erred in Dismissing Appellant's Complaint

After carefully considering the matter, the Court answers this question in the negative for the following two reasons.

First, Judge Littlefield did not err in finding that the record did not demonstrate any "affirmative act on the part of [Respondent] that would rise to the level of false pretenses, false

representation, or actual fraud." (Dkt. No. 12 at 3.) More specifically, to prove that a debtor acted by false pretenses, the plaintiff must prove, inter alia, that the debtor knowingly and willingly promoted "an implied misrepresentation or conduct by the debtor . . . ." *In re Henderson*, 423 B.R. 598, 621 (Bankr. N.D.N.Y. 2010) (Davis, J.) (*citing In re Gabor*, 05-BR-18719, 2009 WL 3233907, *4 [Bankr. S.D.N.Y. Oct. 8, 2008]). In addition, "[t]o prevail on a claim of false representation, the plaintiff must show[, inter alia, that] the debtor made an express false or misleading statement . . . ." *In re Henderson*, 423 B.R. at 621 (*citing In re Gabor*, 2009 WL 3233907, at *4). Finally, to prove that the debtor actually defrauded the plaintiff, the plaintiff must show, inter alia, that the debtor made a representation to the plaintiff that the debtor knew was false. *See In re Henderson*, 423 B.R. at 621 ("'[A]ctual fraud' as used in [11. U.S.C.] § 523[a][2][A] means common law fraud, provable by showing: [1] a representation made by debtor to the creditor; [2] debtor's knowledge of the falsity when the representation was made . . . . ."). Here, the Court agrees with Judge Littlefield's conclusion that none of the three items upon which Appellant relied in deciding to purchase Acme amounted to an affirmative step by Respondent to mislead or defraud Appellant. (Dkt. No. 12 at 3-5.)

Second, Judge Littlefield's conclusion that he was precluded from deciding whether Respondent had an obligation to disclose Acme's deteriorating sales percentage based on the Albany Supreme Court's Decision and Order is supported by the record. More specifically, "28 U.S.C. § 1738 directs federal courts to accord state judicial proceedings 'the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Long Island Lighting Co. v. Imo Indus. Inc.*, 6 F.3d 876, 885 (2d Cir. 1993) (quoting 28 U.S.C. § 1738 ). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present

action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007).

Here, Appellant argued, inter alia, that Respondent's failure to inform Appellant that Acme's sales percentage decreased by 30% between April 2005, and December 2005, constitutes actual fraud. (*See* Dkt. No. 5, Attach. 13 at 86 ["Your Honor, under the case law, . . . silence can, in fact, constitute . . . fraud. If there is something so material as this and you keep silent about it, . . . I don't know if you want to call it actual fraud[, but] I do."].) In state court, according to the Albany Supreme Court's Decision and Order dated January 30, 2008, Appellant made the same argument in state court because the Albany Supreme Court found, unequivocally, that Respondent did not have an obligation to disclose Acme's deteriorating sales percentage to Appellant. (Dkt. No. 11 at 7 n.3. ["Alternatively, . . . a fraud cause of action may be predicated on acts of concealment where the Respondent had a duty to disclose material information. Such is not the case in this action."] [citation omitted].) In addition, in state court, Appellant filed a claim against Respondent for fraud arising under identical circumstances as he alleged in the adversary proceeding below. (*Compare* Dkt. No. 11 [Albany Supreme Court's Decision and Order] *with* Dkt. No. 5, Attach. 1 [Appellant's Complaint].)

For all of these reasons, the Court finds that Judge Littlefield did not err in dismissing Appellant's Complaint.

## IV.     HEARING TRANSCRIPT COST

The Court finds that the hearing held before Judge Littlefield on July 20, 2011, is a part of the record on appeal pursuant to Fed. R. Bankr. P. 8006 because it contains Judge Littlefield's findings of fact and conclusions of law. Fed. R. Bankr. P. 8006 ("The record on appeal shall include the items so designated by the parties, . . . *and* any opinion, findings of fact, and

conclusions of law of the court."). Because Appellant neglected to designate this hearing and its transcript in his record on appeal, the Court directed the Clerk of the Court to prepare a copy of the transcript of the hearing at the Appellant's expense. *Id.* ("Any party filing a designation of the items to be included in the record shall provide to the clerk a copy of the items designated, or, if the party fails to provide the copy, the clerk shall prepare the copy at the party's expense."). As a result, Appellant is ordered to pay the Clerk of the Court twenty-five dollars and fifty-five cents ($25.55) within thirty (30) days of this Decision and Order, which represents the cost of transcribing the hearing before Judge Littlefield on July 20, 2011.

**ACCORDINGLY**, it is

**ORDERED** that Appellant's appeal (Dkt. No. 1) is **DENIED**, and the Bankruptcy Court's decision is **AFFIRMED**; and it is further

**ORDERED** that the Appellant submit twenty-five dollars and fifty-five cents ($25.55) to the Clerk of the Court no later than thirty (30) days of this Decision and Order for the cost of transcribing the hearing held before Judge Littlefield on July 20, 2011.

Dated: September 24, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge